IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **UNDER SEAL** |
| ) | Criminal Case No. 1:10-cr-385 (RDA) |
| TAWFEEQ H. A. MOHAMMED, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Tawfeeq H. A. Mohammed's ("Defendant") Second Motion for Early Termination of Supervised Release ("Motion"). Dkt. 160. Considering the Motion,[1] Defendant's Memorandum in Support of the Motion (Dkt. 161), the Government's Opposition to Defendant's Motion (Dkt. 164), Defendant's Reply (Dkt. 165), and Defendant's Letters to the Court (Dkt. Nos. 162; 166), it is hereby ORDERED that Defendant's Motion is DENIED for the reasons that follow.

I. BACKGROUND

From about December of 2007 through about June 7, 2010, Defendant resided in a United States government-owned or leased apartment complex in Maadi, Egypt (the "Residence"). Dkt. 74, ¶ 1. The Residence was used by United States personnel assigned to the United States Embassy in Cairo, Egypt, and thus, fell within the special maritime and territorial jurisdiction of the United States. *Id*. In June of 2010, Defendant, at the Residence, possessed on his laptop pictures of a minor engaging in sexually explicit conduct. *Id*. The minor that was depicted in those images was

---

[1] Defendant expressly incorporates his previous motion and all of its exhibits, Dkt. Nos. 147; 151; 152; 153, in the instant Motion, so the Court will also consider those documents.

Defendant's then stepdaughter who was nine years old at the time that the pictures were taken. Dkt. 74 at 2.

On October 7, 2010, Defendant was indicted on two counts of production of visual depiction of a minor engaging in sexually explicit conduct in violation 18 U.S.C. § 2251(a) and (c) (Counts One and Two); enticement of a minor to engage in criminal sexual activity within special territorial jurisdiction in violation of 18 U.S.C. § 2422(b) (Count Three); attempted transportation of visual depictions depicting a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) (Count Four); and possession of visual depictions of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (Count Five). Dkt. 21, 1. On December 3, 2010, Defendant pleaded guilty to Count Five of the Indictment, and upon the Government's motion, the Court dismissed Counts One through Four of the Indictment. Dkt. Nos. 73; 75; 76.

Consistent with the agreement of the parties, on April 29, 2011, the Court sentenced Defendant to a sentence significantly lower than that recommended by the Sentencing Guidelines; 78 months of imprisonment to be followed by a 10-year term of supervised release. Dkt. 120 at 2. In addition to the standard conditions of supervised release, certain special conditions were imposed. *Id*. at 4-5. Specifically, pursuant to the special conditions, Defendant was required to:

>(1) not incur new credit card charges or open additional lines of credit without the approval of the Probation Officer;
>
>(2) provide the Probation Officer with access to requested financial information;
>
>(3) participate in and pay for mental health programs as directed by the Probation Officer, to include psychosexual evaluation and sex offender treatment;
>
>(4) waive all rights of confidentiality regarding mental health / sex offender treatment in order to allow the release of information to the Probation Officer and authorize communication between the Probation Officer and treatment providers;

(5) participate in a program approved by the Probation Office for treatment and monitoring of sex offenders, with partial costs to be paid by Defendant, as directed by the Probation Officer;

(6) register with the State Sex Offender Registration Agency in any state where Defendant resides, is employed, carries on a vocation, or is a student according to federal and state law, and as directed by the Probation Officer;

(7) submit to and pay for polygraph testing as part of his sex offender therapeutic program;

(8) submit to penile plethysmograph testing or Able Assessment for Sexual Interest, as directed by the Probation Office as part of Defendant's sexual offender therapeutic treatment;

(9) not possess or use a computer to access any online computer services at any location, including employment, without the prior approval of the Probation Officer, including any internet service providers, bulletin board systems, or any other public or private computer network;

(10) not accept any paid volunteer positions involving children;

(11) not have access to or possess any pornographic material;

(12) have no contact with minors unless supervised by a competent informed adult, approved in advance by the Probation Officer;

(13) submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, as further detailed in the Judgment;

(14) comply with and pay for the requirement of the Computer Monitoring Program as administered by the Probation Office, as further detailed in the Judgment;

(15) not engage in spamming or harassment;

(16) not sell or offer to sell any item on the Internet for another person or entity without preapproval and authorization from the Court or Probation Officer, as further detailed in the Judgment;

(17) not utilize any sex-related adult telephone services, websites, or electronic bulletin boards, as detailed in the Judgment;

(18) not possess or utilize any video gaming system, console, or other device which would enable contact and/or sharing of data with other individuals known or unknown to Defendant; and finally,

      (19) not have contact, direct or indirect, with the victim or her family.

*Id*.

On July 7, 2020, Defendant filed his First Motion for Early Termination ("First Motion"), requesting that his term of supervised release be either terminated in full or that certain conditions be eliminated. Dkt. 147. The Government opposed the Motion, Dkt. 156, and on August 2, 2020, Defendant filed his Reply, Dkt. 157. On August 5, 2020, the parties came before the Court for a hearing on the Motion where Defendant's wife, Khulood Saleh Al-Hadaei, and his former attorney, Ashraf Wajih Nubani,[2] testified, and counsel for Defendant and the Government presented argument. The Court granted-in-part and denied-in-part Defendant's First Motion. Dkt. 159. The Court denied Defendant's request for early termination of supervised release and denied his requests that the conditions concerning his financial reporting, permission to travel, and supervision while interacting with minors be eliminated. *Id.* The Court granted Defendant's request with respect to the condition regarding drug testing and mandatory computer reporting to allow for Defendant to work at certain businesses that, as a condition of employment, use software to monitor Defendant's computer use and block the ability of Defendant to browse pornography of any kind. *Id.*

On October 10, 2023, Defendant filed a Second Motion for Early Termination of Probation.[3] Dkt. 160. On January 3, 2024, this Court instructed the Government to file its position on Defendant's Motion. Dkt. 162. The Government filed its Opposition on January 17, 2024. Dkt. 164. Defendant filed his response on January 22, 2024. Dkt. 165. On April 24, 2024,

---

[2] Ashraf Wajih Nubani is currently representing the Defendant, but at the time of the hearing on Defendant's First Motion, he was not representing Defendant.

[3] The Court observes that the instant Motion is styled as an unopposed Motion; however, the Government has in fact filed an Opposition, which the Court will consider.

Defendant filed a letter regarding a supplemental psychosexual evaluation with the Court. Dkt. 166. Defendant waived his request for a hearing. The Court finds that Defendant's Motion is now ripe for disposition.

## II. STANDARD OF REVIEW

As a general matter, pursuant to 18 U.S.C. § 3583(e), this Court has the authority to terminate a previously imposed term of supervised release. It is uncontested that Defendant bears the burden of demonstrating that early termination of supervised release is warranted. *See e.g.*, *United States v. Weber*, 451 F.3d 552, 559 n. 9 (9th Cir. 2006); *United States v. O'Hara*, Case No. 00-cr-170, 2011 WL 4356322 at *3 (E.D. Wis. 2011); *United States v. Dilullio*, No. CRIM. A. 08-761, 2011 WL 665623 at *2 (E.D. Pa. Feb. 23, 2011). Consistent with statutory requirements, Defendant is serving his eighth year of the ten-year supervision term and therefore, may be considered for early termination. 18 U.S.C. § 3583(e)(1).

Accordingly,

> [t]he court may, after considering the factors set forth in section 3553 (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), terminate a term of supervised release and discharge the defendant released . . . if [the court] is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e). The Court should first consider, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment . . .;" (3) "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;" (4) "any pertinent policy statement . . .;" (5) "the

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and (6) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

### III. ANALYSIS

Defendant moves this Court to terminate his remaining term of supervised release in full. Dkt. 161. For the reasons that follow, the Court finds that early termination of Defendant's supervised release is not appropriate.

In support of his Motion, Defendant argues, like in his First Motion, that his many accomplishments, including his model prison behavior, compliance with the terms of his supervised release, continued employment, completion of sex offender treatment, getting married, starting a family, and obtaining a graduate degree, warrant early termination of supervised release. Dkt. 161 at 3-5. Defendant contends that supervision is no longer needed because in addition to this "stellar record," Defendant also "is not a threat to children, nor does he have an interest in child porn." Dkt. 161 at 7. Defendant also asserts that his strong community support, is an additional compelling reason to grant early termination, because it will ensure "his continued success and positive contribution to society." Dkt. 161 at 6. Finally, Defendant highlights that his circumstances have changed since his First Motion. He states that he purchased a new home, opened a new business, and welcomed his second daughter. Dkt. Nos. 161 at 9, 12; 162 at 1. In response, the Government contends that Defendant's Motion should be denied due to the nature of Defendant's offense and because he has not shown a significant change in circumstances such that early termination is warranted. Dkt. 164 at 3-4.

A. The Section 3553(a) Factors

The nature and circumstances of Defendant's offense is undoubtedly serious. Defendant pleaded guilty to possession of visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4). Dkt. 73. The minor who was depicted in the images that Defendant possessed was Defendant's then 9-year-old stepdaughter. Dkt. 148 at 2. By photographing his stepdaughter in a sexually explicit manner, Defendant abused a close familial relationship. Throughout the pendency of the litigation surrounding his conviction, and even to this day, Defendant maintains that he took the explicit photos of his stepdaughter "under domestic abuse and strange circumstances." Dkt. 161 at 10-11. While the Court acknowledges that this is Defendant's perspective, such statements by Defendant are troubling and do not make clear to the Court that he has accepted responsibility for the criminal conduct to which he pleaded guilty. Defendant's attempts to excuse his criminal behavior are even more troubling to the Court where, as here, Defendant abused a minor-female family member and now argues that one of the driving factors for his Motion is his desire to be unsupervised with other minor-female family members (his daughters). Defendant describes his criminal conduct as a product of his "situation" and as born of a desire to shield his nine-year-old step-daughter from "promiscuity." *Id*. Yet, the Statement of Facts to which Defendant pleaded guilty makes clear that Defendant not only knowingly possessed visual depictions of his stepdaughter engaging in sexually explicit conduct, Defendant *took* the pictures and then saved them on *multiple* devices. Dkt. 74. Also absent from Defendant's discussion of his criminal conduct is any discussion of the impact that his actions may have had on that minor. Thus, under the facts of this case, the Court finds that the nature and circumstances of the offense and Defendant's history and characteristics weigh against early termination.

Moreover, early termination would not provide adequate deterrence to Defendant and others. Absent agreement by the parties, Defendant's sentence applicable under the Sentencing Guidelines range, would have yielded a recommended sentence far more significant than that which was imposed. As the sentencing Judge told Defendant in rendering the sentence, "the [G]uidelines in this case really are a great deal more than the sentence [Defendant would] [ ] receive[.] '[A] great deal more' meaning the guideline range, if it was 38, would be 235 to 293 months [of incarceration]." Dkt. 151-1 at 3. Defendant was only sentenced to 78 months of incarceration and 10 years of supervised release, as opposed to a supervised release term of life, because the sentencing Judge found that the sentence fairly accounted for the harm caused. *Id.* at 3-4. Importantly, "[t]erminating Defendant's term of supervision early, where the term was such a significant part of his sentence, would undermine the deterrent message the Court intended to send to Defendant and other would-be criminals that engaging in similar conduct will have significant consequences." *United States v. Zilevu*, No. 1:19-cr-356 (RDA), 2024 WL 287698, at *3 (E.D. Va. Jan. 25, 2024). While the Court acknowledges that Defendant does not have a criminal record beyond the instant offense, the Court finds that the need for deterrence militates against early termination.

Defendant also contends that early termination is justified in order to avoid unwanted sentencing disparities, but this Court disagrees. As an initial matter, "consistent with the Sentencing Commission's policy statement, child sex offenders are often sentenced to lifetime supervised release following prison." *Smith v. United States*, No. 2:16-CR-51, 2023 WL 8586680, at *7 (E.D. Va. Dec. 11, 2023). Defendant's sentence already varied downward greatly, with only 10 years of supervised release. Thus, Defendant has not demonstrated that completing his 10-year term of supervised release would create an unwarranted sentencing disparity. To the contrary,

decreasing Defendant's term of supervised release further would be more likely to create unwarranted sentencing disparities for defendants convicted of similar crimes, rather than avoid them. Accordingly, the Court finds that the need to avoid unwarranted sentencing disparities also weighs against early termination.

Next, the Court considers the "need" for the sentence imposed. Defendant argues that there is no longer a need for supervision. Specifically, one of Defendant's conditions of supervised release is that he may not have contact with minors unless supervised by a competent, informed adult approved by the Probation Office. Dkt. 120 at 4. In addressing Defendant's First Motion, the Court noted that the birth of his daughter weighed in favor of continuing supervised release with this special condition, given the nature of Defendant's offense. Defendant argues, however, that he has already gone through the early phases of welcoming a child and therefore the condition is no longer needed. Dkt. 161 at 12. Now with his second daughter, Defendant argues that his inability to be alone with his daughters is causing unusual hardship for his family. *Id.* Defendant's wife submitted a letter to the Court largely underscoring the inconvenience of Defendant's supervised release. She states that with her two young daughters and her maternity leave coming to an end, there would be significant financial and logistical challenges of childcare should she return to work while Defendant is still unable to be alone with his daughters. The Court is sympathetic to Defendant's wife's perspective, but as stated in the Court's prior Order, "the Court must be guided by principles unrelated to inconvenience." Dkt. 159 at 16.

Considering that Defendant was convicted of possession of child pornography where the victim was Defendant's stepdaughter, the Court is not convinced that the birth of another young daughter weighs in favor of the termination of his supervised release. *C.f. United States v. Heidebur*, 417 F.3d 1002, 1005-06 (8th Cir. 2005) (upholding supervised release condition that

9

Defendant could not be alone with his minor biological daughter where in committing his offense Defendant "violated a close familial relationship by photographing his stepdaughter in a sexually explicit manner"). The addition of another newborn daughter does not undermine the need for Defendant's supervised release given that he violated a close familial relation in commission of his underlying conviction. In fact, supervision is particularly necessary as Defendant navigates life with his two young daughters[4] in order to protect their safety and that of any other child. It also bears repeating that while Defendant does not deny taking the photos of his then stepdaughter, he continues to maintain that the offense conduct was the result of a domestic dispute and that he "has genuine doubt about the matter." Dkt. 161 at 11 n.16. Again, these statements do not reassure the Court that Defendant understands the severity of his conviction or that he has taken full responsibility for his actions, such that the goals of rehabilitation have been achieved. As such, the Court finds that there is a continued need for supervision and this factor weighs against early termination.[5]

---

[4] Defendant also cites to his 2018 psychosexual evaluation that classified him as a "situational offender" to support his argument that supervision is no longer needed. Dkt. 161 at 5 n.10. As Defendant's offense conduct occurred under circumstances where a minor female family member was under his care, the Court is not persuaded that this classification forecloses the need for supervision now that he is the father of two daughters.

[5] Defendant also argues that his registration as a sex offender diminishes the need for supervision, because of the strict conditions it imposes on him. Dkt. 161 at 4 n.4. This Court disagrees. As an initial matter, registration on the sex offender registry is legally required by statute, and failure to register would have further serious consequences. Additionally, registry on the sex offender registry was an explicit *condition* of Defendant's supervised release, and thus serves a separate function. Supervised release "serves the critical function of connecting a defendant to resources, such as trainings and treatments, and ensures some level of monitoring that can be essential to helping a defendant avoid falling back into inappropriate behavior." *Whisnant*, 2024 WL 1526135, at *6 (citation omitted). Accordingly, Defendant's sex offender registration does not obviate the need for supervised release.

B. Defendant's Conduct

With respect to Defendant's conduct, Defendant argues that his faithful compliance with his terms of supervised release weighs in favor of early termination. Although Defendant's efforts are commendable, faithful compliance with the terms of supervised release is expected, particularly here, where the Court cautioned that any violation of supervised release would lead to much harsher sanctions. *See Folks v. United States*, 733 F. Supp. 2d, 649, 652 (M.D.N.C. 2010)) ("[E]ven model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination.") (internal citations omitted). Additionally, courts within the Fourth Circuit have made clear that even perfect compliance with the terms of supervised release is not itself sufficient to warrant termination. *See United States v. Whisnant*, No. 114CR00024MRWCM1, 2024 WL 1526135, at *2 (W.D.N.C. Apr. 8, 2024) (noting that while Defendant's efforts to comply with these requirements are positive developments, they do not warrant early termination of supervision). Accordingly, Plaintiff's compliance with the terms of his supervised release cannot be deemed extraordinary, and the Court will not attribute significant weight to Defendant fulfilling his obligations to this Court.

Here, Defendant also asserts that separate from his exemplary record on supervised release, his accomplishments while under supervision are so extraordinary that they weigh in favor of early termination. Dkt. 161 at 1-2. Significantly, Defendant obtained an MBA during his term of supervised release, started a family, and welcomed his first daughter. Further, since his First Motion, Defendant has purchased a home, opened a business, and welcomed his second daughter. *Id.* at 4-5. While the Court appreciates that these are tremendous accomplishments and commends Defendant's efforts, "these circumstances do not *ipso facto* justify early termination." *Zilevu*, 2024

WL 287698, at *3. Further, they do not demonstrate to the Court that completing the full term of supervised release would "be too harsh or inappropriately tailored to serve the general need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *United States v. Grimaldi*, 482 F.Supp. 2d 248, 251 (D. Conn. 2007) (internal citation omitted); *see also Whisnant*, 2024 WL 1526135, at *3 (denying a motion for early termination where child sex offender had been free of violations, completed all required treatment, maintained gainful employment, had the support of his family, and claimed that he posed almost no risk to re-offend). Therefore, Defendant's conduct while on supervised release neither weighs in favor nor against early termination.

### C. Risk of Recidivism

Defendant next argues that early termination is warranted because he poses near zero risk of reoffending. In support of his argument, he points to an independent psychological evaluation conducted in 2018 that indicated there is "no category with zero risk" but that Defendant "is in the lowest risk group for committing future sexual offenses." Dkt. 161 at 17. Defendant contends that due to the "passage of significant time since the report was conducted," Defendant "is even less of a risk now." *Id.* at 7. More recently, Defendant submitted a letter to the Court containing an additional psychosexual evaluation completed by Dr. Barbara Hernandez that was filed with the Court on April 24, 2024.[6] According to Dr. Hernandez's report, Defendant's score on the psychosexual evaluation placed him in the "very low risk range" and Dr. Hernandez supports termination of his probation. Dkt. 166-1 at 1-2. Dr. Hernandez's report also states that the conditions of supervision are restricting him from uniting with his family as he cannot be present

---

[6] The report was filed on April 24, 2024, but the report does not indicate the date of the assessment.

around young children without a trusted adult, which in turn is causing his family financial and emotional stress. *Id.* Although Dr. Hernandez asserts that continued supervision may strain Defendant's recovery because the added stress may compromise his physical and cognitive functioning, she does not provide any specific findings regarding the risks associated with early termination.[7] Taking Dr. Hernandez's report in the most favorable light, it suggests that Defendant will continue to be compliant with his conditions of supervised release and will not reoffend. It does not render the "previously imposed term of supervised release either too harsh or inappropriately tailored to serve general punishment goals." *Folks,* 733 F. Supp. 2d at 651 (citations omitted). Therefore, neither the 2018 evaluation that was explicitly considered by this Court in resolving Defendant's First Motion, nor the 2024 evaluation by Dr. Hernandez justify early termination.

## D. Interest of Justice

The "interest of justice" provision of Title 18, United States Code, Section 3583(e)(1) gives "the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period." *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999). Here, the Court notes that Defendant's conditions of supervised release were already modified in August 2020 to make them less onerous, and there is no evidence that it is in the interest of justice to terminate Defendant's supervised release early.

---

[7] It is also worth noting that Dr. Hernandez appears to accept, without serious assessment or analysis, Defendant's representation that the *eight* pictures taken of Defendant's nine-year-old stepdaughter and saved on multiple electronic devices were taken as "evidence" to show his then wife. Nor does Dr. Herandez grapple with or explore the apparent contradiction between Defendant's description of his concept of sex and his criminal conduct of taking sexually explicit photographs of a nine-year old. Absent such examination of Defendant's conduct and recognition of the impact of his conduct on the minor by Defendant or Dr. Hernandez, it is difficult for the Court to accord great weight to Dr. Hernandez's findings regarding Defendant's likelihood of recidivating or of the risk he poses to other minor female family members.

Further, as Defendant argues, he has performed well while on supervised release, and the services and treatments that he has engaged with seem to be helping him make significant progress. Thus, the Court finds that keeping Defendant connected with these services and under the supervision that has allowed him to improve his life so drastically continues to be in the interest of justice.

\* \* \*

Ultimately, Defendant has not demonstrated significant circumstances such that early termination is any more warranted now than it was in Defendant's prior motion for early termination. Thus, Defendant's Second Motion for Early Termination (Dkt. 160) will be denied.

### III.  CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 160) is DENIED and it is

FURTHER ORDERED that all terms of Defendant's supervised release remain in FULL FORCE AND EFFECT.

It is SO ORDERED.

Alexandria, Virginia
May 8, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge